UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

MARVIN FLEMINGS,
    Plaintiff,

vs.                                                     10-1318

ILLINOIS DEPARTMENT OF CORRECTIONS, et.al.,
    Defendants.

## MERIT REVIEW ORDER

    This cause is before the court for a merit review of the plaintiff's claims. The court is required by 28 U.S.C. §1915A to "screen" the plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

    The plaintiff, a pro se prisoner, has filed this lawsuit pursuant to 42 U.S.C. §1983 claiming that his constitutional rights were violated at the Hill Correctional Center. The Plaintiff did not use a standard complaint form, but instead has filed a confusing array of documents with the court including 72 pages of both handwritten claims and exhibits. The document clearly violates the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. On the first few pages, the Plaintiff lists the following as Defendants in the caption of his complaint: the Illinois Department of Corrections, Warden Acevedo and Illinois Attorney General Lisa Madigan. It is not until page 16 that the Plaintiff provides another list of defendants including: Correctional Officers R. Mills, Mr. Stewart, Mr. Mason, and Mr. Saunucter; Warden Gerardo; Administrative Review Board Member Sarah Johnson; Illinois Department of Corrections Director Michael Randle; Dr. Johns; Nurse Mrs. Lindorff and Inmate Michael Taylor.

    The plaintiff's complaint is rambling and repetitive, but he clearly identifies the following claims:

1) "Body and Property Tampering." (Comp, p.17)

    The Plaintiff claims officers are somehow directing inmates to spit on him when he is out of his cell and his cell mate is wiping his urine on the plaintiff's property. The Plaintiff claims these actions could cause his death. The Plaintiff has failed to articulate a violation of his constitutional rights. The Plaintiff does not allege that he was harmed in any way nor that he suffers from any serious medical condition. The Plaintiff has also failed to identify any officers that are responsible for the actions of his cell mate or any other inmate.

1

2) "Damage Property."(Comp, p.17)

The Plaintiff says on July 7, 2009, he saw Officer Stewart came into his cell while he and his cell mate were at dinner. When the Plaintiff returned, he says there were lines on his television. The Plaintiff says the incident has not been properly investigated.

The Plaintiff has failed to state a violation of his constitutional rights. Based on the allegations in his complaint, no one saw Officer Stewart damage the Plaintiff's television. However, even if the officer was responsible, both the Supreme Court and the Seventh Circuit have found no due process violation for damaging property without authority as long as the state "provides [the prisoner] with an adequate postdeprivation remedy." *Stewart v McGinnis,* 5 F.3d 1031, 1036 (7th Cir. 1993); *see also Hudson v Palmer,* 468 U.S. 517 (1984). Therefore, the Plaintiff may file a tort claim in the Illinois Court of Claims for any property loss. *Stewart,* 5 F.3d at 1036; *see also Morissette v DeTella,* 1997 WL 619851 at 8 (N.D.Ill. Sept. 29, 1997).

3) "Denial of Commissary"(Comp, p.18)

The Plaintiff says on August 22, 2009, Commissary Officer Saunucter wrote on a commissary slip that the Plaintiff had insufficient funds and owed $25.09. The Plaintiff claims this is incorrect and he did have money in his account. Even if this were true, the Plaintiff has failed to articulate a violation of his constitutional rights based on this one time occurrence. In fact, "even if commissary privileges had been denied completely, (the Plaintiff) has no constitutionally protected right to commissary access." *Stewart v McGinnis,* 800 F.Supp 604, 619 (N.D.Ill. 1992).

4) "Thief of Money Order- Damage" (Comp, p.18).

The Plaintiff says on April 14, 2009, Officer Mills gave the Plaintiff a big envelope which contained a letter from his mother that was ripped in half. The envelope also indicated that the enclosed money order had been "returned to sender because of being damaged by the U.S. Post Office." (Comp., p. 9). The Plaintiff says he did not receive the money order, nor did he receive a letter from the post office telling him they were sorry for the damage to his mail. The Plaintiff says he "feels the officers and administration had something to do with this mail..." (Comp., p. 9). A response to the Plaintiff's grievance indicates the money order was extremely damaged so it was returned to the sender to be replaced. The letter, envelope and acknowledgment of post office handling damage was given to the Plaintiff.

The Plaintiff has failed to articulate a violation of his constitutional rights. Federal Rule of Civil Procedure 8 requires a complaint allege "enough facts to state a claim to relief that is *plausible* on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 563 (2007). The plaintiff's wild speculation that some unknown officers were responsible for damaging his mail does not meet this standard.

5) "Denial of Claimant out-going family mail." (Comp, p.19)

2

The Plaintiff says the staff is harassing him when it comes to sending out mail. Prisoners have a protected First Amendment interest in both sending and receiving mail. *Rowe v Shake,* 196 F.3d 778, 782 (7th Cir. 1999). However, legitimate governmental interests in the order and security of penal institutions justify the imposition of certain restrictions on inmate correspondence. *Procunier v Martinez,* 416 U.S. 396, 412-13 (1974)(overruled on other grounds). "It is well established that under ordinary circumstances uniformly applied rules which regulate the mail privileges of inmates of federal penal institutions, and which are necessary to the orderly conduct of the institution, do not violate any constitutional rights..." 60 Am.Jur.2d,Penal and Correctional Institutions, sec. 47.

The Plaintiff has given three examples:

On October 1, 2009, the Plaintiff wrote a letter to his mother, but it was returned to him with a copy of a "Bulletin #04-051" which stated that the Plaintiff could not include drawings in his letter.(Comp., p. 10). The inmate filed a grievance, and the response stated that the Plaintiff could only put the address and return address on his mail. The Plaintiff had added other information on the envelope, and therefore the letter was returned with instructions to "[m]ark out or repackage into another envelope before sending." (Plain. Comp, Ex. p. 5) The Plaintiff was not prevented from mailing his letter and has failed to articulate a violation of his constitutional rights. *See Ware v Randolph,* 2008 WL 4390315 (C.D.Ill. Sept. 24, 2008)(rule allowing only return address, address and notation of legal mail on outgoing mail is reasonably related to legitimate penological interest).

On April 29, 2009, the Plaintiff says he wrote two cards and a letter to his mother. These were returned with a copy of a "Bulletin 05-043" which stated that inmates were only allowed to send out envelopes with pre-stamped postage. (Comp, p. 11) In order words, the prison does not allow the use of loose postage stamps. Inmates must instead purchase envelopes with the postage pre-stamped. Again, the Plaintiff was not prevented from sending this letter in the appropriate envelope and an Appellate Court has already determined that provisions of this type do not impermissibly intrude on First Amendment rights. *See Little v Norris*, 787 F.2d 1241, 1243 (8th Cir. 1986)(prohibition against receipt and use of postal stamps constitutional because policy implemented to eliminate contraband exchange among inmates).

On May 10, 2010, the Plaintiff says he wrote a letter to his mom and to the United States Attorney General's Office, but it was returned to him with a memorandum telling him he could not write more than one party in the same letter. The Plaintiff clearly cannot send one letter to two separate addresses. The Plaintiff has failed to articulate a violation of his constitutional rights based on interference with outgoing mail.

6) "Food Poison" (Comp, p.19).

The Plaintiff says on April 7, 2009, he ate something on his breakfast food tray that made him very sick. Again, the Plaintiff does not come close to articulating a violation of his constitutional rights. "The Plaintiff must plead factual allegations which show the right to relief

exists beyond mere speculation by 'raising a reasonable expectation that discovery will reveal evidence' to substantiate the plaintiff's claims. *Cueto v Grogan,* 2009 WL 2849007 at 2 (S.D.Ill Sept. 1, 2009) *quoting Twombly,* 550 U.S. at 556.

The Plaintiff also has section of his complaint entitled, "Medical Status," but it is not clear what the Plaintiff is alleging. (Comp, p. 13). It appears the Plaintiff does not believe the wording used on the results of his test for HIV and Hepatitis was clear and he believes the staff is trying to cover up his real medical condition. The Plaintiff has failed to clearly articulate a violation of his constitutional rights.

**IT IS THEREFORE ORDERED:**

1) **The Plaintiff's complaint is dismissed for failure to state a claim pursuant to Fed. R. Civ. Proc. 12(b)(6) and 28 U.S.C. Section 1915A. All pending motions are denied as moot [d/e 2], and this case is closed, with the parties to bear their own costs.**

2) **This dismissal shall count as one of the Plaintiff's three allotted strikes pursuant to 28 U.S.C. Section 1915(g). The Clerk of the Court is directed to record the Plaintiff's strike in the three-strike log.**

3) **The Plaintiff must still pay the full docketing fee of $350.00 even though his case has been dismissed. The agency having custody of the Plaintiff is directed to remit the docketing fee of $350.00 from the Plaintiff's prison trust fund account if such funds are available. If the Plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the Plaintiff's trust fund account to the clerk of court each time the Plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety. The filing fee collected shall not exceed the statutory filing fee of $350.00.**

4) **The Plaintiff is ordered to notify the clerk of the court of a change of address and phone number within seven days of such change.**

5) **The Clerk is directed to mail a copy of this order to the Plaintiff's place of confinement, to the attention of the Trust Fund Office.**

6) **If the Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal *in forma pauperis* should set forth the issues the Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the**

**Plaintiff does choose to appeal, he will be liable for the $455 appellate filing fee irrespective of the outcome of the appeal.**

Entered this 8th day of November, 2010.


        **s/Joe Billy McDade**
_____
        JOE BILLY MCDADE
   UNITED STATES DISTRICT JUDGE